29D05-2307-CT-006502
Filed: 7/17/2023 12:36 PM
Clerk
Hamilton County, Indiana
Hamilton Superior Court 5

USDC IN/ND case 1:23-cv-00419-HAB-SLC document 16 filed 07/17/23 page 1 of 12

IN THE HAMILTON COUNTY SUPERIOR COURT

| | |
|---|---|
| STATE OF INDIANA | § |
| COUNTY HAMILTON | § |
| | |
| MISTY EASTERDAY as Administrator, | § |
| of the ESTATE OF HUGH EASTERDAY | § |
| Plaintiff, | § |
| v. | § |
| | § |
| QUALITY CORRECTIONAL CARE LLC, | § CAUSE NO. : |
| LAGRANGE COUNTY SHERIFF DEPT. | § |
| AKA TRACY HARKER | § |
| UNKNOWN QCC EMPLOYEES | § |
| UNKNOWN LCSD EMPLOYEES | § |
| in their individual capacities, | § |
| | § |
| Defendants. | § |
| ++ | § |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Nature of the Case

1. This is an action for damages brought by Misty Easterday on behalf of the Estate of Hugh Easterday against Quality Correctional Care LLC ("QCC"), LaGrange County Sheriff's Department ("LCSD"), aka Tracy Harker, and unknown QCC/LCSD employees in their in individual capacities. The Defendants recklessly and indifferently failed to provide Hugh Easterday proper medical treatment and accommodations in violation of the 8th and 14th Amendments to the United States Constitution, and the QCC defendant(s) have committed the Indiana torts of negligence and/or caused the wrongful death (or loss of chance of survival) of Hugh Easterday.

## Jurisdiction and Venue

2. Hamilton County, Indiana is a county of preferred venue under Indiana Rules of Trial Procedure 75(A)(4), as the Defendant QCC's principal place of business is located in Hamilton. County, Indiana.

3. Hamilton County is located within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## Conditions Precedent

4. All conditions precedent to the institution of this lawsuit have been fulfilled.

## Parties

5. Misty Easterday ("Misty") is a citizen and resident of the State of Indiana. Misty was the lawful wife of Hugh Easterday at the time of his death. Misty has been appointed as the special administrator of the estate for the decedent, Hugh Easterday ("Hugh"). Hugh is survived by his wife, Misty Easterday, as well as their three children.

6. Defendant Quality Correctional Care, LLC ("QCC") is a domestic corporation headquartered in Carmel, Indiana which operates as a for-profit foreign corporation in Indiana, and was, at the time of the events giving rise to plaintiff's claims, providing medical care to inmates in the LaGrange County Jail ("LCJ"). QCC's principal office is located in Hamilton County, Indiana, 12900 N. Meridian Street, Suite 140, Carmel, IN, 46032. The registered agent for QCC is Lisa Scroggins, 12900 N. Meridian Street, Suite 140, Carmel, IN, 46032.

7. The LaGrange County Sheriff's Department ("LCSD") is located in the county seat of LaGrange County, which is in LaGrange, Indiana. The Sheriff's Department is responsible

for operating the LaGrange County Jail ("LCJ"), which is also located in LaGrange, Indiana. Tracy Harker is the elected Sheriff for LaGrange County, Indiana

8. Unknown Nurses, Employees, and Doctors, are employees of QCC, and they were employed by QCC at all times pertinent to this complaint. John Doe #1, John Doe #2, and John Doe #3 are jail deputies employed by LCSD. These individuals are responsible for the health and safety of the inmates at LCJ. All of these individuals were responsible for the health and safety of Hugh Easterday.

**Factual Allegations**

9. LaGrange County Sheriff's Department ("LCSD") has a legal duty to provide adequate medical care to its inmates. This duty passes along to its employees, deputies, and jail staff.
10. QCC had a contract with LCSD to provide medical services to its inmates at the LCJ.
11. QCC is not a "Qualified Provider" under Indiana Code 34-18-2-24.5.
12. The contract between QCC and MCSD was in effect between March 1, 2021 and July 31, 2021. As a part of this contract, all QCC employees owe a duty of care to inmates at the LCJ.
13. QCC was responsible for providing sufficient medical staff to provide adequate medical care to the inmates of LCJ.
14. LCSD was responsible for ensuring its jail was properly staffed with sufficient medical staff, and that its jail employees were properly trained to identify and provide emergency medical treatment.
15. LCSD and QCC's duty to provide medical care includes transporting inmates to off-site medical facilities to seek appropriate medical care.

16. LCSD and QCC were responsible to train and supervise employees and deputies at the LCJ to provide adequate medical care to the inmates of LCJ. This duty included making sure those charged with monitoring inmates were proficient in life saving techniques such as CPR and properly responding to cardiac arrests and possible clinical drug overdoses.

17. In recent years, opioid and methamphetamine addictions have sky rocketed across the nation, including in northern Indiana, and this fact has been widely reported and discussed in the national, state, and local news media.

18. It is well-known that the use and withdrawals of (from) these drugs in general, can cause serious health issues, including death if not properly monitored and treated.

19. It is also well-known that these drugs can cause cardiac arrests, and that prompt treatment and intervention is necessary to ensure those affected have the best chance of survival.

20. It is common for prison and jail staff at the federal, state, and local levels to encounter inmates who suffer from withdrawal and overdose symptoms while in custody. In response, many facilities, including those administered by the Federal Bureau of Prisons, have implemented policies, procedures, and training specifically designed to monitor and protect these inmates. Others, including the LCJ, have done little, if anything to address the problem.

21. LCSD and QCC was responsible for adequately providing medical treatment at the LCJ, and to ensure that only inmates who were medically fit for incarceration were admitted to the LCJ, and remained in the facility.

22. On or about May 21, 2021, Hugh was arrested and was processed into the custody of the LCSD.

23. While he was incarcerated Hugh experienced chest pains. These pains were communicated to the jail staff (LCSD employees) and by proxy to QCC.

24. Chest pains are a serious medical need. Any licensed medical nurse and/or physician is aware that chest pains are a serious condition that can be indicative of a possible stroke or heart attack.

25. Despite knowledge of Hugh's chest pains, QCC did not provide Hugh adequate medical treatment nor did QCC arrange for Hugh to see an off-site cardiologist or pulmonologist.

26. Hugh was unfit for confinement, and should have been transported to an appropriate medical facility to seek care for his obvious medical issues.

27. QCC failed to properly train LCSD deputies in the intake process. QCC did not properly staff the jail with medical personnel to conduct the intake procedure.

28. Hugh's condition was such that it was clear and obvious that he needed immediate medical attention.

29. Unknown jail deputies, including John Doe 1, John Doe 2, and John Doe 3 were all deliberately indifferent to Hugh's obvious medical needs and did not provide him adequate medical treatment.

30. Upon information and belief, no responsible physician ever examined Hugh while he was incarcerated.

31. The lack of an onsite responsible physician and/or other medical provider was a result of QCC policy and practice.

32. On or about July 20, 2021, Hugh collapsed onto the floor of the jail.

33. A fellow inmate attempted to provide CPR to Hugh.

34. Jail deputies did not provide adequate life saving measures to Hugh.

35. The deputies' failure to provide adequate medical care was due to LCSD and QCC's failure to properly staff, train and supervise.

36. The delay in providing proper life saving measures decreased Hugh's chance of survival and was a responsible cause of his death.

37. Due to QCC's failure to properly staff the LCJ with sufficient medical staff, a licensed medical provider was not readily available to provide life saving measures to Hugh at the time of his death.

38. The names of all QCC employees and deputies that neglected to care for Hugh are not known by the Plaintiff at this time.

39. Hugh was pronounced death prior to be transported to a hospital.

40. LCSD and QCC would have been financial liable for any medical costs provided to Hugh, had he been transported as a prisoner to an off-site medical facility.

41. QCC was responsible for determining which inmates should be transferred to offsite facilities for medical treatment.

42. QCC had a policy and practice of understaffing the LCJ with medical personnel. This policy and practice prevented timely transfers of inmates to emergency medical facilities, allowed the intake of inmates without a proper medical screening, and left the jail without individuals licensed to provide medical care to the inmates. LCSD was aware the LCJ was not adequately staffed with medical personnel.

43. QCC and LCSD did not transport Hugh to an emergency medical facility during the course of his custodial sentence until after he appeared to be in cardiac arrest. This failure to transport was despite clear signs that Hugh was suffering serious health problems.

44. Hugh had an obvious medical need.

45. Hugh received no meaningful medical treatment while he was incarcerated at the LCJ.

46. The QCC and LCSD, and their respective staffs who interacted with Hugh should have ensured that he got proper medical treatment.

47. Defendants individually and collectively failed to take reasonable measures to provide treatment and assessment for Hugh's serious medical needs.

48. Hugh's wrongful death and/or loss of chance of survival was the result of the inaction, negligence, deliberate indifference, and/or failures of QCC and its respective employees.

49. The actions and inaction of the (known and unknown) individual defendants were conducted within the scope of their employment or contract with QCC and the LCSD respectively.

50. The actions and inactions of all of the defendants were taken under color of state law.

**Statement of Claims**

**Count I – § 1983 claim**, **Violation of the Eighth and Fourteenth Amendment**

**All Individual Defendants**

**(Unknown Individual QCC Defendants and Individual LCSD Employees, including John Doe 1, John Doe 2, and John Doe 3)**

51. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

52. Plaintiff was in the lawful custody of the LCSD.

53. Defendants were aware that Plaintiff was in need of obvious medical treatment at the jail.

54. Defendants were reckless and deliberately indifferent in the manner Plaintiff was deprived of adequate medical treatment.

55. Plaintiff has the right to be free from cruel and unusual punishment under the 8th and 14th Amendments while he was incarcerated.

56. Plaintiff's death and suffering was the result of the Defendants' reckless and deliberately indifferent treatment of the Plaintiff.

57. Plaintiff's need for medical attention was clear and obvious.

58. Defendants were all government actors, who were acting under the color of state law as to all times relevant to the complaint.

59. The Defendants were obligated to provide medical treatment and assessment to the Plaintiff.

60. The Defendants failed to provide proper medical treatment and assessment to the Plaintiff.

61. This failure to provide medical treatment and assessment was intentional, reckless, and/or indifferent.

62. The failure to provide medical treatment and assessment to the Plaintiff is a violation of his 14th Amendment Rights, as well as his 8th Amendment Rights to be free from cruel and unusual punishment.

63. By way of this claim, Plaintiffs are seeking all available compensatory and punitive damages, remedies, and just relief, including recovery of attorney fees and costs.

**Count II- Policy Procedure and Practice, 42 USCA sec. 1983**

**(*Monell* Claim against QCC and LCSD)**

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

65. Plaintiff's death was caused by the failure of QCC and LCSD to properly staff, supervise, train, and/or implement policy in providing life saving measures to individuals in cardiac distress.

66. The failure by QCC and LCSD to properly implement policy to monitor and provide for care for inmates suffering from cardiac distress is violation of Federal Law.

67. Plaintiff's death was caused by the failure of QCC and LCSD to properly supervise, train, and/or implement policy in providing life saving measures to individuals suffering from a possible drug over dose.

68. The failure by QCC and LCSD to properly implement policy to monitor and provide for care for inmates suffering from a possible drug overdose is violation of Federal Law.

69. Plaintiff's death was caused by the QCC and LCSD's policy and practice of understaffing the LCJ with properly trained medical staff

70. The failure by QCC and LCSD to properly implement policy to monitor and care for inmates with opiate withdrawal falls under a *Monell* claim, and is a violation of Federal Law.

71. The failure by QCC and LCSD to properly implement policy and training to identify and/or approve inmates in need of medical care at off-site emergency facilities and/or provide diagnostic testing falls under a *Monell* claim, and are a violation of Federal Law.

72. QCC and LCSD's pattern of failing to identify and/or approve inmates in need of medical care to emergency care facilities falls under a *Monell* claim, and is a violation of Federal Law.

73. Due to either an express policy or a widespread practice and custom, QCC (who were acting under the color of state law), and LCSD to not properly treat, monitor, and/or transport inmates, who were in need of urgent medical treatment violates the Plaintiff's rights under the 8$^{th,}$ and 14th amendments for not providing appropriate medical care.

## Count III –State Law Claims of Negligence/Wrongful Death against

## (QCC and QCC Employees)

74. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

75. QCC and (its employees, contractors, and designees) owed Plaintiff a duty of care.

76. QCC and (its employees, contractors, and designees) were negligent in their failure to provide proper medical care to the Defendant.

77. The conduct of the individual QCC employees, contractors, and designees was wanton, knowingly, and/or reckless.

78. QCC is liable for not providing sufficient medical training to the jail staff.

79. QCC is liable for not providing sufficient medical staff at the jail.

80. QCC is liable for not providing sufficient medical equipment to the jail.

81. QCC and (its employees, contractors, and designees) is liable for not performing appropriate medical screening, diagnostic testing, and/or transfers to off-site medical facilities.

82. QCC is liable for the actions of the jail personnel and contracted entities committed within the scope of their employment, to the extent that any officers or employees were purportedly acting in accordance with policies, procedures or practices that are asserted in defense of their actions.

83. QCC is vicariously liable for the actions of its employees.

84. QCC have a duty to provide adequate medical care to inmates at the MCJ.

85. QCC and its employees, contractors, and designees failed to comply with the applicable standard of care to the Plaintiff, by failing to provide him proper oversight and care.

86. The failures by QCC and its employees, contractors, and designees reduced Plaintiff's chance of survival.

87. The failures by QCC and its employees, contractors, and designees caused the wrongful death of the Plaintiff.

88. By way of this claim, Plaintiff is seeking all available & appropriate damages, remedies, and just relief.

### Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray for relief and judgment, as follows:

I. Awarding compensatory damages in favor of Plaintiff against all Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

II. Awarding punitive damages in favor of Plaintiff against all individual Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

III. Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees and expert fees; and

IV. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Charles C. Hayes*
Charles C. Hayes 24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Charles@chjrlaw.com
Jane@chjrlaw.com

/s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032
(317) 581-7440
slammers@mhmrlaw.com

## JURY TRIAL DEMAND

Plaintiff respectfully request that this matter be tried by a jury on all issues.

Respectfully submitted,

*/s/ Charles C. Hayes*

Charles C. Hayes 24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Jane@chjrlaw.com

/s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032
(317) 581-7440
slammers@mhmrlaw.com